IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHRISTOPHER AJAYI,　　　　　§
　　　　　　　　　　　　　　　§
　　　　　Plaintiff,　　　　　§
　　　　　　　　　　　　　　　§
V.　　　　　　　　　　　　　　§　　　　No. 3:12-cv-284-M-BN
　　　　　　　　　　　　　　　§
WALGREEN CO.,　　　　　　　　§
　　　　　　　　　　　　　　　§
　　　　　Defendant.　　　　　§

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management, including a recommendation on Defendant's motion for summary judgment, pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the District Court. The undersigned magistrate judge issues the following findings of fact, conclusions of law, and recommendation.

**Procedural Background**

This is an age discrimination case brought under the Texas Commission on Human Rights Act ("TCHRA"). *See* Dkt. No. 17 at 6-9; TEX. LAB. CODE ANN. § 21.051 (West 2006). Plaintiff Christopher Ajayi is a pharmacist who claims he was constructively discharged by his former employer, Defendant Walgreen Co. *See* Dkt. No. 17 at 2. Plaintiff filed a joint charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") and obtained a right-to-sue letter. *See* Dkt. No. 24-3 at 25-29. Plaintiff then sued Defendant

in the 44th District Court of Dallas County, Texas. *See* Dkt. No. 1-1 at 5-14. Defendant removed the case to this court on the basis of diversity jurisdiction. *See* Dkt. No. 1.

Defendant then filed a Traditional and No-Evidence Motion for Summary Judgment. *See* Dkt. No. 22. Defendant contends that Plaintiff's lawsuit is barred because he failed to file his charge of discrimination within the statutorily prescribed time limit. *See id.* Defendant also asserts that there is no evidence, direct or circumstantial, of discrimination, pretext, or constructive discharge. *See id.* In his Response, Plaintiff argues that he complied with the statutorily prescribed time limits or, alternatively, that those time limits were equitably tolled and that there is evidence to support each element of his age discrimination claim. *See* Dkt. No. 27.

The undersigned now concludes that Defendant's motion for summary judgment should be granted.

## Factual Background

The summary judgment evidence, when all facts are viewed and all reasonable inferences are drawn in the light most favorable to Plaintiff as the nonmoving party and all disputed factual controversies are resolved in Plaintiff's favor, shows the following. Plaintiff began working for Defendant on June 28, 1998. *See* Dkt. No. 24-3. He was assigned to store #4293 in DeSoto, Texas as a store pharmacist and worked a regular forty-hour week. *See* Dkt. No. 29-5 at 7. Januari Lewis became the District Pharmacy Manager and started supervising Plaintiff's store in June of 2008. *See* Dkt. No. 24-1 at 4.

Sometime prior to February of 2009, Lewis came through the pharmacy drive-

thru at Plaintiff's store and talked to Plaintiff in a demeaning manner, pointing her finger in his face and threatening to fire him. Customers and other employees could hear what she was saying over the speaker, so Plaintiff turned it off. *See* Dkt. No. 24-2 at 6-7, 10, 12-13; Dkt. No. 29-2 at 20-21, 44-48, 51. On another occasion, Lewis was in Plaintiff's store. As Plaintiff was looking at a computer to fill a prescription, Lewis asked Plaintiff if he could see. Plaintiff told Lewis that was why he wore glasses, and she replied "hmm." Lewis also scheduled Plaintiff to work with fewer technicians than other pharmacists. *See* Dkt. No. 24-2 at 15; Dkt. No. 29-2 at 53.

In 2009, Defendant implemented a program for its pharmacists to become certified to administer immunizations. *See* Dkt. No. 24-4 at 17-20. To become certified, pharmacists were required to complete three phases of training: (1) an on-line self-study course and pre-test; (2) a live seminar; and (3) a final exam. *See* Dkt. No. 24-4 at 23-24. The pharmacists were provided with a voucher code to access the on-line study materials, pre-test, and final exam. *See id.* Pharmacists were scheduled to attend live seminars and then subject to a deadline to complete the final exam within a certain period of time after the class. *See* Dkt. No. 24-1 at 9.

Plaintiff was scheduled to attend a class on August 26, 2009. *See* Dkt. No. 29-1 at 15. On August 24, 2009 Plaintiff told Stephanie Odrobina, an Immunization Trainer for Defendant, that he had not received the on-line study materials. *See id.* On August 25, she sent him the materials and told him that he probably would not have time to finish that portion of the training before the live seminar but could do so after the class. *See* Dkt. No. 24-3 at 3. Plaintiff attended the live seminar and received a

certificate for doing so on August 26. *See id.* at 4.

On September 28, 2009, Odrobina sent Plaintiff "the self-study information to re-do your immunization training," informed Plaintiff that it must be completed by October 7, and said that, after it was completed, she would forward him the final exam code. Dkt. No. 24-4 at 22. On October 7, Plaintiff told Odrobina that he could not access the pre-test portion of the immunization course. *See* Dkt. No. 24-3 at 5. Plaintiff did not meet the October 7 deadline. *See* Dkt. No. 24-1 at 9. Lewis met with Plaintiff in October 2009 about his failure to obtain the certification, and Plaintiff explained that Defendant had not corrected the access problem so that he could complete the on-line portion. *See id.* at 5-6; Dkt. No. 24-2 at 30-31.

On November 16, 2009, Lewis was informed by a representative from headquarters that three pharmacists in her district had started the program but not completed it. One of them was Plaintiff. *See* Dkt. No. 24-4 at 32-33. Also during this time period, Plaintiff participated in a conference call initiated by Lewis in December 2009 in which she told the pharmacists in her district that the deadline to complete the immunization training was April 1, 2010. *See* Dkt. No. 24-1 at 12.

Defendant gave Plaintiff a third opportunity to complete the immunization program. Lewis testified that she went to Plaintiff's store and explained to him that corporate had allowed this extension just for him and failure to complete the program by January 7, 2010 would result in him being removed as a store pharmacist. *See id.* at 10, 13-14. Plaintiff testified, however, that he was never given or aware of a January 7 deadline and that he believed the deadline was April 1, 2010. *See* Dkt. No. 29-6 at 30-

31.

On December 31, 2009, Lewis requested the on-line materials be sent to Plaintiff, and Plaintiff received them on January 4, 2010. *See* Dkt. No. 24-4 at 29-30. On January 7, Plaintiff emailed Odrobina, stating that he was still experiencing problems accessing the website but they had just been resolved by the help center and "I will work on this soon." Dkt. No. 29-1 at 22.

On January 12, 2010, Lewis went to Plaintiff's store and issued a "Final Written Warning" for repeated failure to complete the immunization program "despite numerous emails, re-enrollments, deadlines and in-person visits." Dkt. No. 24-1 at 48; Dkt. No. 24-3 at 6. Plaintiff was removed from his current position as a staff pharmacist at store #4293. *See* Dkt. No. 24-1 at 48; Dkt. No. 24-2 at 43, 57-58*;* Dkt. No. 24-3 at 6. In the warning, Lewis stated: "He is not currently being restricted from working in any capacity and has been instructed that he can select any available shifts through market scheduling. Upon completion of his immunization certification, he can then be scheduled by the district office staff. Failure to complete this immunization certification by April 1, 2010 may be grounds for further disciplinary action, up to and including immediate termination." Dkt. No. 24-1 at 48; Dkt. No. 24-3 at 6.

Plaintiff submitted a written response to the disciplinary warning, *see* Dkt. No. 24-3 at 7-11, in which he accused Lewis of having a "discriminatory attitude" toward him which "dated back to over a year ago," *id.* at 10. Plaintiff characterized Lewis's version of events in the written warning as a fabrication and alleged that Lewis "designed a method of progressive discipline so she could get rid of me" and that the

written warning was evidence of "a pre-conceived and calculated effort to get rid of me." *Id.* Plaintiff pointed out that the final deadline was April 1, 2010, and claimed that Lewis applied a double-standard when she claimed his deadline was January 7. *See id.* at 11. Plaintiff also explained the problems with access to the on-line portions of the immunization program and the resulting difficulties in completing the program. *See id.* In addition, Plaintiff said that Lewis discriminated against him by denying 70% of his requests for time off to tend to urgent family needs even though that was not her practice with other pharmacists. *See id.*

Plaintiff completed the on-line portion of the program four days later, and received a certification dated January 16, 2010. *See* Dkt. No. 24-1 at 49; Dkt. No. 24-3 at 12, 16. On January 21, 2010, one of Defendant's Market Scheduler's notified Lewis that she had contacted Plaintiff to schedule him for work as a floater and that Plaintiff told her that he would not float and would not work until he got a set store. *See* Dkt. No. 24-3 at 14. On January 28, Lewis told Plaintiff that she "was unsure of how to proceed at this point" because Defendant had attempted to provide him with a schedule, but he declined. *See id.* at 13. Plaintiff contacted Lewis several times after January 16, 2010, seeking a permanent store assignment. *See* Dkt. No. 29-1 at 25-26.

On February 2, 2010, Plaintiff contacted Lewis again seeking a store assignment and reminding her that he was not an "on-call pharmacist." *Id.* at 26. At that time, Lewis did not have confirmation from Defendant that Plaintiff had completed the program, and she informed him that he would be classified as a floating pharmacist upon completion of the program. *See* Dkt. No. 24-3 at 17. She also warned him that the

matter must be resolved within thirty days of the last day that he worked in order to avoid the loss of benefits or his status in the company. *See id*. The next day, Lewis was notified by Defendant that Plaintiff completed the final exam on February 2, 2010. *See* Dkt. No. 24-1 at 22, 50.

On February 4, 2010, Lewis notified Plaintiff that he was "now officially coded as a floating pharmacist" and gave him information about scheduling shifts. She also stated that "[p]lacement in one particular store will be based on a number of factors and may be an option but is not a guarantee at this time." Dkt. No. 29-1 at 30. On February 7, Plaintiff responded that he had not applied for a floating pharmacist position and did not want such an assignment. Instead, he wanted to return to a permanent store pharmacist position. *See* Dkt. No. 24-3 at 18.

Lewis and Plaintiff talked on February 11, which was thirty days after he had been removed from his store assignment. *See id*. at 22, 29. According to Lewis, she told him that he had become a part-time, hourly employee and was classified as "inactive" because he had refused to return to work for thirty consecutive days. *See id*. at 28, 31. Plaintiff denies that he was told floating pharmacists who failed to work for thirty consecutive days would be classified as "inactive" or that there had been a change in his employment classification. Instead, he claims that he reiterated his desire to be assigned to a store. *See* Dkt. No. 29-6 at 31. Defendant thereafter attempted to schedule Plaintiff for work shifts, but Plaintiff refused to accept any shift-work and demanded that he be permanently assigned to a store or otherwise guaranteed a forty-hour work-week. *See* Dkt. No. 24-1 at 23-25, 27-29, 104; Dkt. No. 24-2 at 42, 44-46;

Dkt. No. 29-3 at 36, 38, 43, 52.

On March 16, 2010, Plaintiff wrote to Defendant's Vice President Erv Seimoneit complaining that he was experiencing discrimination. *See* Dkt. No. 24-3 (App. at 113, not included in electronically-filed copy). Seimoneit referred the letter to Frank Koen, Defendant's Market Pharmacy Director for the Dallas Market, who later talked to Plaintiff. *See* Dkt. No. 29-4 at 35. Koen told Plaintiff that he could not revise Lewis's decision to change Plaintiff's status to floating pharmacist. Koen also told Plaintiff that his choices were to continue to hold the position of floater and accept work assignments while waiting to see if he would be assigned to a store, to take personal leave, or to resign or retire. *See* Dkt. No. 24-1 at 34-36; Dkt. No. 24-2 at 71. In response, Plaintiff did not resign or retire but said that he would not return to work unless Defendant assigned him to a permanent position at a store. *See* Dkt. No. 24-1 at 35-36; Dkt. No. 29-1 at 31. Unbeknownst to Plaintiff, he was classified as "on leave" after this meeting, and, as a result of the "on leave" classification, Defendant did not attempt to schedule Plaintiff for floating pharmacist assignments or offer him other work. *See* Dkt. No. 24-1 at 36.

Because he had not worked since January 12, 2010, Plaintiff began contacting various store managers to obtain work, and one of them asked him to work on July 30, 2010. *See* Dkt. No. 24-2 at 49-50. When the store manager attempted to pay him, Plaintiff learned for the first time that he had been classified as "on leave." *See* Dkt. No. 29-3 at 95. He contacted Lewis on August 1 about getting paid for the day worked and for his accrued vacation pay, *see* Dkt. No. 24-3 at 22, and, on August 2, Lewis

asked Plaintiff how he obtained the one-day job since he had not gone through market scheduling and he was out "on leave," *see id.* at 21. Because of the "on leave" classification, there were problems in paying Plaintiff for the day worked and accrued vacation. *See* Dkt. No. 29-1 at 36.

There was a telephone call between Plaintiff and Lewis on August 6, 2010. What was said in that telephone conversation is in dispute. Lewis claims that Plaintiff told her that he resigned, *see* Dkt. No. 24-1 at 38, 40, but Plaintiff claims that he told Lewis that he planned to resign, *see* Dkt. No. 29-6 at 32. On August 17, 2010, Plaintiff sent Lewis an email stating: "Please be informed of my resignation/retirement from this company, effective August 6, 2010." Dkt. No. 24-3 at 24. In his deposition, Plaintiff explained that the August 6, 2010 effective date referred to his prior verbal communication with Lewis. *See* Dkt. No. 29-3 at 78. In his affidavit to rebut Defendant's summary judgment motion, Plaintiff explains that he does not know why he referenced an August 6, 2010 effective date and that it "may" have been because that is the date he told Lewis he planned to resign. *See* Dkt. No. 29-6 at 32.

Plaintiff and several of Defendant's representatives had subsequent communications about payment for the day that Plaintiff worked in July 2010 and his accrued vacation pay and other benefits. *See* Dkt. No. 24-1 at 39. Between August 25 and 30, 2010, Plaintiff and Lewis exchanged emails concerning his "on leave" status. *See* Dkt. No. 29-1 at 38-42. On August 31, Lewis told Plaintiff that she had received authorization to pay him for the day worked in July and that he could go by the store and pick up a cash payment. *See* Dkt. No. 24-1 at 52. She also informed him that, after

he received that payment, she would "process your resignation" and arrange for payment of his accrued benefits. Dkt. No. 29-1 at 43. Plaintiff objected to the cash payment arrangement for the day worked in July and was eventually paid by check. *See* Dkt. No. 24-2 at 52, 76; Dkt. No. 24-3 at 23. On a Profit-Sharing Payment Election Form dated November 12, 2010, Defendant indicated that Plaintiff's termination date was August 17, 2010. *See* Dkt. No. 29-1 at 48. Plaintiff was sixty years old at that time. *See* Dkt. No. 24-3 at 25.

Plaintiff filed a joint complaint with the EEOC and the TWC on February 11, 2011, claiming discrimination based on age, national origin, and retaliation. *See* Dkt. No. 24-3 at 25-29. On his charge, he stated that the earliest date discrimination took place was January 12, 2010. *See* Dkt. No. 24-3 at 25. On his wage claim he indicated that he resigned on August 6, 2010. *See* Dkt. No. 24-3 at 3. At the TWC hearing, Plaintiff testified that told Lewis he intended to resign on August 1, 2010. *See* Dkt. No. 24-4 at 3-5. He further testified that he decided to resign on August 6, 2010 and that, on that day he "verbally ... informed her of my intention to resign and that she should take that as my notice for resignation" and that he later tendered his written resignation, which was effective August 6, 2010. *Id.* at 4.

Plaintiff received a right-to-sue letter from the TWC and filed this lawsuit. *See* Dkt. No. 24-3 at 26. In his First Amended Original Complaint, Plaintiff pursues only an age-discrimination claim under the TCHRA. *See* Dkt. No. 17 at 6-8.

### Legal standards

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for

-11-

summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

Before suing an employer under the TCHRA, an aggrieved employee must first exhaust his administrative remedies by filing a complaint with the TWC "not later

than the 180th day after the date the alleged unlawful employment practice occurred." TEX. LAB. CODE ANN. § 21.202(a) (West 2006); *see also Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010). This 180-day time limit is "mandatory and jurisdictional." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Schroeder*, 813 S.W.2d at 487-88. That is, a plaintiff's failure to file a complaint within the 180-day period is a failure to exhaust administrative remedies that deprives the court of subject matter jurisdiction. *Lamar Univ. v. Jordan*, No. 09-10-00292-CV, 2011 WL 550089, at *2 (Tex. App. – Beaumont Feb. 17, 2011, no pet.) (mem. op.) (citing *City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008); *Harris v. Showcase Chevrolet*, 231 S.W.3d 559, 561 (Tex. App. – Dallas 2007, no pet.)). Indeed, "[t]he Texas Supreme Court has frequently characterized the 21.202 deadline as 'mandatory and jurisdictional,'" and, "[f]ollowing these decisions, [the Third Court of Appeals] and the other Texas courts of appeals that have addressed the issue have consistently held that a plaintiff's failure to comply with the 180-day filing requirement deprives the trial court of subject-matter jurisdiction over employment-discrimination claims." *Lueck v. State*, 325 S.W.3d 752, 758 (Tex. App. – Austin 2010, pet. denied) (citations omitted); *see also Gonzalez v. Champion Technologies, Inc.*, 384 S.W.3d 462, 471 (Tex. App. – Houston [14 Dist.] 2012, no pet.) ("Failure to timely file an administrative complaint also prevents a employee from pursuing the complaint in court.").

This remains the controlling law for purposes of this case, notwithstanding recent Texas Supreme Court decisions to which Plaintiff has pointed. In *In re United*

*Services Automobile Association* ("*USAA*"), 307 S.W.3d 299 (Tex. 2010), the Texas Supreme Court held that the two-year statute of limitations for filing suit in an employment-discrimination action, Tex. Lab. Code Ann. § 21.256, is not a jurisdictional prerequisite to suit. *See USAA*, 307 S.W.3d at 310. But the Supreme Court did not address whether the 180-day deadline imposed by Section 21.202 for filing an administrative complaint is similarly non-jurisdictional. In *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500 (Tex. 2012), the Texas Supreme Court held that the 180-day deadline is mandatory and jurisdictional when the defendant is a state governmental entity but expressly declined to decide whether Section 21.202's filing requirement itself is jurisdictional in nature, over a dissent by Chief Justice Jefferson arguing that Section 21.202's filing requirement should be held to be non-jurisdictional. *See* 381 S.W.3d at 510 n.15, 514; *see also id.* at 516-24 (Jefferson, C.J., dissenting). Since *USAA* was decided, Texas courts of appeals have continued to hold that Section 21.202 imposes a jurisdictional prerequisite to filing suit, even in cases against private entities.[1]

---

[1] *See, e.g.*, *City of El Paso v. Marquez*, 380 S.W.3d 335, 342 (Tex. App. – El Paso 2012, no pet.) ("The 180-day statutory deadline is a mandatory and jurisdictional prerequisite to filing suit."); *Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 199-200 (Tex. App. – Houston [14 Dist.] 2011, no pet.) ("This administrative step is required before the person may seek relief in a civil action."); *Forge v. Nueces Cnty.*, 350 S.W.3d 740, 746 (Tex. App. – Corpus Christi 2011, no pet.) (noting that timely filing of administrative complaint under Section 21.202 is "mandatory and jurisdictional" prerequisite to filing suit); *Sw. Bell Tel., L.P. v. Edwards*, No. 05-09-00606-CV, 2011 WL 3672288, at *6 (Tex. App. – Dallas Aug. 23, 2011, no pet.) (mem. op.) (concluding that court lacked subject matter jurisdiction where plaintiff failed to file complaint with TWC); *Tex. Youth Comm'n v. Garza*, No. 13-11-00091-CV, 2011 WL 2937431, at *3 n. 1 (Tex. App. – Corpus Christi July 21,

So, too, have the United States Court of Appeals for the Fifth Circuit and courts in this district. *See Williams v. Merck & Co., Inc.*, 381 Fed. Appx. 438, 444 (5th Cir. 2010) ("As the [Section 21.202] limitations period is both mandatory and jurisdictional, Williams's retaliation claim is automatically time-barred and Merck is entitled to summary judgment."); *McDougall v. Binswanger Mgmt. Corp.,* No. 3:10-cv-2563-D, 2012 WL 1109551, at *5 (N.D. Tex. Apr. 3, 2012) (explaining that *USAA* did not alter the rule that Section 21.202 imposes a jurisdictional prerequisite to filing suit). And these courts have followed the holding that Section 21.202 imposes a jurisdictional prerequisite to filing suit with good reason: When applying state law, courts in the Fifth Circuit are bound to follow the holding of the state's highest court on the issue at hand. *See American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (explaining that, "[t]o determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court" and must follow "a final decision by the state's highest court on the issue at hand"). Here, the Texas Supreme

---

2011, no pet.) (mem. op.) (joining three other Texas courts of appeals in holding that, even after *USAA*, "jurisdiction is still implicated by the plaintiff's compliance or non-compliance with section 21.201" (collecting cases)); *In re ArcelorMittal Vinton, Inc.*, 334 S.W.3d 347, 349 (Tex. App. – El Paso 2011, orig. proceeding) ("Texas law requires that a complaint of unlawful employment discrimination be filed with the Texas Commission on Human Rights within 180 days after the alleged unlawful employment action occurs. This limitations period is mandatory and jurisdictional. That is, failure to timely file an administrative complaint deprives Texas trial courts of subject matter jurisdiction over a subsequent claim against the employer." (citations omitted))*; Lueck,* 325 S.W.3d at 759-66 (holding that, "unless and until the supreme court departs from its view in *Schroeder* that the [TCHRA] requires exhaustion of remedies, we will continue to treat the 180-day filing requirement as 'mandatory and jurisdictional'" (citations and some internal quotation marks omitted)).

Court's latest word on this issue came in, among other cases, *Specialty Retailers* and *Schroeder*. As Chief Justice Jefferson's *Prairie View A&M* dissent itself at least implicitly acknowledges by urging that the Supreme Court overrule "*Schroeder*'s statement that the 180-day time limit is jurisdictional," 381 S.W.3d at 519 (Jefferson, C.J., dissenting), it remains Texas law, by way of the Texas Supreme Court, that Section 21.202 imposes a jurisdictional prerequisite to filing suit.

This likewise constrains this Court to continue to follow this rule, however prescient Chief Justice Jefferson's *Prairie View A&M* dissent may or may not ultimately prove to be if the Texas Supreme Court later takes up this issue directly. And, even if this Court were not bound by the state's highest court's holdings, in the absence of a contrary intervening enactment of the Texas Legislature or perhaps a contrary intervening holding by a majority of the Texas intermediate appellate courts – none of which is present here – this Court would be bound to follow the Fifth Circuit's holding in *Jones v. Grinnell Corp.*, 235 F.3d 972, 974-75 (5th Cir. 2001), and, later, in *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281 (5th Cir. 2004), that the TCHRA's exhaustion requirements impose a jurisdictional prerequisite to filing suit. *See American Int'l Specialty Lines*, 352 F.3d at 270 n.4; *Woodfield v. Bowman*, 193 F.3d 354, 360 n.15 (5th Cir. 1999); *FDIC v. Abraham*, 137 F.3d 264, 268-69 (5th Cir. 1998).

Because Section 21.202(a)'s filing requirement is "mandatory and jurisdictional," Plaintiff bears the burden of establishing compliance with the statute. *See, e.g.*, *Sanchez v. Kennedy*, 202 S.W.3d 857, 859 (Tex. App. – Corpus Christi 2006, no pet.) ("The plaintiff has the burden to allege facts affirmatively demonstrating that the trial

court has subject-matter jurisdiction."); *accord McDougall*, 2012 WL 1109551, at *3

n.5. And, as a jurisdictional prerequisite to suit, Section 21.202(a)'s requirement is not

subject to equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393

(1982) (distinguishing jurisdictional requirements from those subject to equitable

tolling); *Jones*, 235 F.3d at 974 ("The district court erroneously assumed that it could

hear a Texas Human Rights Act claim on equitable grounds, despite Jones's failure to

exhaust state administrative remedies. That is not the case. If a complainant fails to

exhaust his state administrative remedies, the Texas Human Rights Act

jurisdictionally bars this court from hearing the case regardless of equitable and policy

concerns."); *accord Manuel v. Sanderson Farms Inc., Processing Div.*, 90 F. App'x 714,

717 & n.14 (5th Cir. 2004) ("Because it is undisputed that Manuel did not file his

charge with the Commission until more than 180 days had elapsed following the

alleged act of employment discrimination, his claims are time-barred under the

TCHRA. As such, the district court lacked subject matter jurisdiction over his action."

(citing and quoting *Jones*, 235 F.3d at 974)); *Howe v. Yellowbook, USA*, 840 F. Supp.

2d 970, 977-78 (N.D. Tex. 2011).[2]

---

[2] *See also Lueck*, 325 S.W.3d at 757-66 (noting that the "parties join issue ... on the question of whether [Section 21.202's] requirement is a jurisdictional prerequisite to suit or merely a requirement that is subject to estoppel and equitable tolling" and holding that it is a jurisdictional prerequisite to suit); *Czerwinski v. Univ. of Tex. Health Sci. Ctr. at Houston Sch. of Nursing*, 116 S.W.3d 119, 122-23 (Tex. App. – Houston [14th Dist.] 2002, pet. denied) ("Appellant also argues that her claim is subject to equitable tolling.... We hold the doctrine of equitable estoppel is not applicable because the [TCHRA's] statutory filing requirements are jurisdictional."); *Gevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550, 552-53 (Tex. App. – San Antonio 2002, pet. denied) (declining to apply the doctrine of equitable tolling to extend section 21.202's

Section 21.202(a)'s 180-day period begins to run when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *See Specialty Retailers, Inc.,* 933 S.W.2d at 493. This is because the discriminatory employment decision is the practice made with discriminatory intent. *Prairie View A&M,* 381 S.W.3d at 509. The ""proper focus is upon the time of the *discriminatory* acts, not upon the time at which the *consequences* of the acts become most painful."" *Specialty Retailers, Inc.,* 933 S.W.2d at 493 (quoting *Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980) (quoting *Abramson v. Univ. of Hawaii,* 594 F.2d 202, 209 (9th Cir. 1979))). Thus, the time for filing the charge begins to run when the employer makes the decision to take the challenged action and informs the plaintiff. *See id.* (holding that 180-day period began to run when employee told she would be terminated if she did not return to work within one year of starting medical leave, not when she was actually terminated); *see also Prairie View A&M,* 381 S.W.3d at 509 (holding that 180-day period began to run when employee informed of alleged discriminatory pay decision); *Comptroller v. Landsfeld,* 352 S.W.3d 171, 178 (Tex. App. – Fort Worth 2011, pet. denied) (holding that 180-day period began to run when employee was told that he would be fired if he did not immediately retire and not on employee's actual last day of employment).

Plaintiff filed his administrative complaint on February 11, 2011. Dkt. No. 24-3 at 25. Therefore, Plaintiff must show that the alleged discriminatory employment

---

180-day filing requirement).

decision occurred within 180 days of that date, or after August 16, 2010.

Plaintiff argues that equitable tolling applies to extend the administrative filing deadline because Plaintiff wrongfully concealed facts from which he could determine that its discrimination against him was illegal age discrimination. Without pointing to any specific decision or act by Defendant, Plaintiff contends that the 180-day filing period began to run on either August 17, when Plaintiff claims he was constructively discharged, or August 31, when Plaintiff was informed he would be paid for the day worked in July and his accrued vacation. Plaintiff submitted his written resignation on August 17, which is within the 180-day window, but the back-dated August 6 effective date – the date of a verbal conversation that Plaintiff had with Lewis – is not.

According to Defendant, there were several key dates, any one of which could have triggered the running of the 180-day filing period, but Plaintiff failed to timely file his complaint from even the latest of those dates. Those dates, Defendant asserts, are January 12, 2010, when Plaintiff was reassigned from permanent store pharmacist to floating pharmacist as a result of his alleged failure to timely obtain immunization certification; February 11, 2010, when Lewis allegedly told Plaintiff that he was "inactive" as a result of his failure to work for thirty consecutive days; July 30, 2010, when Plaintiff worked one shift and learned for the first time that he had been placed "on leave"; or August 6, 2010, the effective date of Plaintiff's written resignation and – more importantly – the date that Plaintiff himself claims he told Lewis that he planned to resign.

The alleged discriminatory employment decision at the core of Plaintiff's lawsuit

is the one to remove Plaintiff from his position as a permanent store pharmacist on January 12, 2010, because he failed to obtain immunization certification by what he characterizes as an arbitrary deadline applied only to him. According to Plaintiff, this act was the culmination of a course of discrimination against him. All of the subsequent acts about which he complains, such as being classified as "inactive" or "on leave" without his knowledge and the resulting payment problems, or the failure to reassign him to a store after he completed the program, relate back to the decision to remove him from his permanent store assignment and are consequences of that decision and his subsequent refusal to accept anything other than full reinstatement as a store pharmacist guaranteed a forty-hour work week.

Plaintiff claims that this "chain of events" ultimately led to his constructive discharge on August 17, 2010, the date of his written resignation. Constructive discharge occurs when an employer makes working conditions so intolerable that an employee reasonably feels compelled to resign. *See Williams*, 381 Fed. Appx. at 443; *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 83 (Tex. App. – Fort Worth 2003, pet. denied). Even though there is a factual dispute about what was said during the August 6, 2010 telephone conversation between Plaintiff and Lewis – whether Plaintiff told Lewis he was resigning or planned to resign – Plaintiff undisputedly was aware of the allegedly intolerable working conditions that led to his constructive discharge or resignation as of that date, and there is no evidence of any new discriminatory acts occurring between August 6 and August 17, 2010.

Nevertheless, Plaintiff argues that he is not bound by the back-dated August 6

effective date in his written resignation. Plaintiff does not definitively identify the date on which he claims he was constructively discharged but argues that it occurred on August 17, the date of his written resignation, or sometime thereafter because Defendant did not accept or process his resignation when it was tendered. *See* Dkt. No, 27 at 19-20, 31-32; Dkt. No. 29-3 at 78-80; *see also* Dkt. No. 17 at 8-9.

Resignation from employment is not required to be in writing, nor is it required to be in any special form, and it takes effect immediately from the time notice of the resignation is given, unless a subsequent date is named, by the one resigning. *See Cooper-Day*, 121 S.W.3d at 84. Moreover, a resignation does not require an acceptance unless it is tendered to take effect on acceptance. *See id.* In his written resignation, Plaintiff took the unusual step of giving a prior, not subsequent, effective date, and he did not require that his resignation be effective upon acceptance. *See* Dkt. No. 24-3 at 24. Thus, Defendant was not required to formally accept the resignation. And, even construing the facts in favor of Plaintiff, the back-dated effective date corresponds to the date on which Plaintiff gave Lewis verbal notice of – at the least, according to Plaintiff's own testimony – his intention to resign. Therefore, assuming without deciding that Plaintiff was constructively discharged, Plaintiff is bound by the August 6, 2010 effective date that he selected and conveyed to Defendant. *See Cooper-Day*, 121 S.W.3d at 85 (holding that effective date of resignation was date it was verbally conveyed to employer).

But, regardless, the exact date of Plaintiff's constructive discharge is not determinative of the issue of whether Plaintiff timely filed an administrative charge

because that is not the date that triggers the running of Section 21.202's 180-day period. Instead, the determinative date is when the Plaintiff was informed of the allegedly discriminatory employment decision. *See Specialty Retailers, Inc.,* 933 S.W.2d at 493. The same events that caused Plaintiff to tell Lewis that he planned or intended to resign on August 6 led to his subsequent written resignation on August 17. Thus, August 6, 2010 is the latest date upon which Plaintiff could have been aware of an allegedly discriminatory employment decision – and therefore the latest possible date from which the 180-day deadline began running. Plaintiff's actual "employment separation was a consequence of his earlier demotion, rather than a separate discriminatory act. In other words, the self-inflicted termination was the point at which the consequences of the allegedly discriminatory demotion became most painful." *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *4 (Tex. App. – Texarkana Dec. 10, 2008, pet. denied) (mem. op.).

In the face of this conclusion, Plaintiff's reliance on equitable tolling and the analysis in *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App. – Houston [1 Dist.] 2006, no pet.), is misplaced because, as explained above, this Court is bound by Fifth Circuit precedent that compels the conclusion that, notwithstanding the discussion in *Davis* (which cites a Fifth Circuit decision that did not address the TCHRA), equitable tolling or estoppel does not apply to extend Section 21.202(a)'s 180-day period. *See Jones*, 235 F.3d at 974; *accord Manuel*, 90 F. App'x 714, 717 & n.14; *Howe*, 840 F. Supp. 2d at 977-78. Moreover, Plaintiff cannot rely on his alleged lack of certainty as to Defendant's discriminatory intent, because "[t]he date of the

discriminatory act controls, not some later date when the employee discovers the act is discriminatory." *Abbott*, 2008 WL 5156453, at *3.

Nevertheless, in the interest of completeness, the undersigned notes that, notwithstanding the Fifth Circuit's holdings as to the inapplicability of equitable tolling or estoppel to Section 21.202's filing requirements, some Texas intermediate appellate courts and some Texas federal district courts have held that the continuing violation doctrine provides an exception to the 180-day filing deadline for unlawful discrimination that manifests over time rather than as a series of discrete acts. *See, e.g.*, *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41-42 (Tex. App. – Austin 1998, pet. denied); *Moreno v. Hilton San Antonio Hill Country Hotel & Spa*, Civ. A. No. SA-12-CV-784-XR, 2012 WL 4796379, at *4 (W.D. Tex. Oct. 9, 2012) ("An exception to application of the 180–day limitations period is the continuing violation doctrine."). When an administrative complaint is timely filed as to one act of discrimination, the doctrine of continuing violation expands the scope of those discriminatory events that are actionable where at least the one discriminatory act or employment decision occurs within the 180-day period. *See Davis*, 979 S.W.2d at 41-42. But "the mere perpetuation of the effects of time-barred discrimination does not constitute a violation [ ] in the absence of independent actionable conduct," *Huckabay v. Moore*, 142 F.3d 233, 238, 240 (5th Cir. 1998) (internal quotation marks omitted), and one-time events such as a termination, suspension, or demotion are discrete adverse actions that cannot be saved by the continuing violation doctrine, *see Williams*, 381 Fed. Appx. at 448 n.13; *Pegram*, 361 F.3d at 280; *Huckabay*, 142 F.3d at 240; *Badilla v. Bombardier Aerospace Corp.*,

-23-

No. 3:02-cv-1021-D, 2003 WL 23017671, at *2 (N.D. Tex. Dec. 18, 2003); *see also Battle v. United Parcel Service, Inc.*, 2011 WL 8202606, at *6 (W.D. Tex. Dec. 21, 2011) ("A suspension is sufficiently similar to a dismissal, demotion, or failure to hire, promote, or train, and thus constitutes a discrete event.").

The Fifth Circuit does not appear to have decided whether the continuing violation doctrine is carved out of its holding that the TCHRA's exhaustion requirements are not subject to equitable exceptions. *See Williams*, 381 Fed. Appx. at 448 n.13 (implicitly recognizing the doctrine in connection with Section 21.202's filing requirement without deciding its applicability because plaintiff did not invoke the doctrine on appeal); *Pegram,* 361 F.3d at 281 (assuming, without deciding, that the doctrine applies to Section 21.202's filing requirement for plaintiff's TCHRA claims but holding that plaintiff's claims would nevertheless be time-barred). The Texas Supreme Court likewise does not appear to have addressed the doctrine's applicability to Section 21.202's filing requirement. But Chief Justice Jefferson's *Prairie View A&M* dissent expressly states that, insofar Section 21.202's filing requirement is jurisdictional (although he argues that the Supreme Court should hold it is not), "the continuing violation doctrine – an equitable exception to the limitations period ... – would no longer be applicable under Texas law." 381 S.W.3d at 521 (Jefferson, C.J., dissenting) (footnote omitted).

Even if this doctrine could apply to Section 21.202's filing requirement for Plaintiff's claim here, regardless of whether the alleged discrimination consisted of discrete acts or unlawful discrimination that manifested over time, the continuing

-24-

violation doctrine would not apply to render Plaintiff's case timely within the 180-day filing period. Here, Plaintiff fails to identify an allegedly actionable discriminatory act or employment decision that occurred after August 6, 2010 and within the 180-day filing period and that would meet the criteria for this exception. *See Valdez v. Am. Home Patient, Inc.*, No. B-05-228, 2006 WL 1967039, at *5 (S.D. Tex. July 12, 2006). Even Plaintiff's allegations regarding problems getting paid in late August 2010 allegedly resulted from the allegedly discriminatory act or employment decision of Plaintiff's being classified as "inactive" or "on leave" without his knowledge – a fact of which, by his own admission (including in his affidavit submitted in opposition to summary judgment), he learned on or before August 6, 2010. *See* Dkt. No. 29-3 at 95; Dkt. No. 29-6 at 32. And Plaintiff has not alleged these issues with getting paid in August 2010 as separate discriminatory acts or employment decisions. *See* Dkt. No. 17 at 2-9; Dkt. No. 27 at 13-18, 24-29.

Further, that Plaintiff may or may not have remained technically employed by Defendant even after August 17, 2010 is not relevant to the Section 21.202(a) analysis because, again, the determinative date is when Plaintiff was informed of the allegedly discriminatory act or employment decision. *See Specialty Retailers, Inc.,* 933 S.W.2d at 493. As such, "mere continuity of employment is insufficient to prolong the life of a cause of action for employment discrimination." *Abbott*, 2008 WL 5156453, at *3.

Neither can Plaintiff rely on his lack of knowledge as to whether he was replaced by a single, younger pharmacist to salvage the timely filing of his TCHRA claim. Hiring a younger replacement "may be evidence that the employer's decision was

discriminatory, but the discharge of the employee because of the employee's age, not the decision to hire someone else, is the unlawful employment practice." *Floersheim v. Motiva Enterprises, LLC*, No. 09-12-00229-CV, 2013 WL 1279201, at *4 (Tex. App. – Beaumont Mar. 28, 2013, no pet.) (mem. op.).

The summary judgment evidence conclusively establishes that Plaintiff's administrative complaint, filed on February 11, 2011, was untimely because it was not filed within Section 21.202(a)'s filing deadline, 180 days of the date on which the alleged unlawful employment practice occurred and because, as discussed above, the equitable tolling doctrine does not apply to Section 21.202(a)'s jurisdictional requirement. As a result, the Court lacks jurisdiction over Plaintiff's TCHRA claim.

## Recommendation

The Court should grant Defendant's Traditional and No-Evidence Motion for Summary Judgment [Dkt. No. 22] and dismiss Plaintiff's case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 10, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE