IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER AJAYI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:12-cv-284-M-BN |
| | § | |
| WALGREEN CO., | § | |
| | § | |
| Defendant. | § | |

**SUPPLEMENTAL FINDINGS AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management, including a recommendation on Defendant's motion for summary judgment, pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the District Court. On June 10, 2013, the undersigned magistrate judge issued findings of fact, conclusions of law, and a recommendation that Defendant Walgreen Co.'s Traditional and No-Evidence Motion for Summary Judgment [Dkt. No. 22] should be granted and that Plaintiff Christopher Ajayi's case should be dismissed with prejudice. *See* Dkt. No. 36. Plaintiff filed objections on June 24, 2013, *see* Dkt. Nos. 37, 38, & 39, and, on July 8, 2013, Judge Lynn issued an order directing that, "[i]n light of Plaintiff's Objections, filed June 10, 2013, this matter is **REMANDED** to Magistrate Judge David L. Horan for further consideration pursuant to the provisions of Title 28, United States Code, Section 636(b)," Dkt. No. 40.

The undersigned now issues these Supplemental Findings and Conclusions to

address Plaintiff's objections. However, the undersigned's recommendation – based on the undersigned's original findings of fact and conclusions of law and the supplemental findings and conclusions herein – has not changed in the face of Plaintiff's objections: "The Court should grant Defendant's Traditional and No-Evidence Motion for Summary Judgment [Dkt. No. 22] and dismiss Plaintiff's case with prejudice." Dkt. No. 36 at 26 of 27.

This case's relevant background facts and procedural history are set out in the undersigned's original Findings, Conclusions, and Recommendation [Dkt. No. 36] ("Original FCR") and will not be repeated here except insofar as is necessary to address Plaintiff's objections. For the sake of brevity, the undersigned will address Plaintiff's objections in an order that tracks each part of the undersigned's Original FCR to which the objections are addressed.

Turning first to Plaintiff's objections to the Original FCR's Factual Background section, Plaintiff's objections, on the whole, are immaterial to the undersigned's ultimate conclusion and recommendation: "The summary judgment evidence conclusively establishes that Plaintiff's administrative complaint, filed on February 11, 2011, was untimely because it was not filed within [Texas Labor Code §] 21.202(a)'s filing deadline, 180 days of the date on which the alleged unlawful employment practice occurred and because, as discussed above, the equitable tolling doctrine does not apply to Section 21.202(a)'s jurisdictional requirement. As a result, the Court lacks jurisdiction over Plaintiff's TCHRA claim." Dkt. No. 36 at 26 of 27.

Plaintiff's Objection #3 takes issue with a supposed finding that "the Notice of

January 12, 2010 demoted [Plaintiff] to a floating pharmacist." Dkt. No. 37 at 2 of 8; *see also* Dkt. No. 38 at 7 of 22. Plaintiff appears to complain that he was not, in fact, "demoted." The Original FCR did not state that Plaintiff was demoted on January 12, 2010; rather, the undersigned stated, as the notice issued that day states, that Plaintiff was "remove[d] ... from his position as a permanent store pharmacist." Dkt. No. 36 at 20 of 27; *see also id.* at 5 of 27, 19 of 27. The only mention of the word "demotion" in the Original FCR appears on Page 22 as part of language that the undersigned quoted from a Texas appellate court decision. To the extent that that quotation may be read as reflecting a finding or conclusion that Plaintiff was "demoted," which the undersigned does not believe to be necessary to the undersigned's ultimate conclusion and recommendation, the undersigned now clarifies the statement on Page 22 as follows: Plaintiff's actual "employment separation was a consequence of his earlier [removal from his position as a permanent store pharmacist], rather than a separate discriminatory act. In other words, the self-inflicted termination was the point at which the consequences of the allegedly discriminatory [removal] became most painful." *Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at \*4 (Tex. App. – Texarkana Dec. 10, 2008, pet. denied) (mem. op.).

Plaintiff's Objection #4 takes issue with a supposed finding that Plaintiff was reclassified as a floating pharmacist on January 12, 2010, rather than on February 4, 2010. *See* Dkt. No. 37 at 2-3 of 8; *see also* Dkt. No. 38 at 7 of 22. This is apparently an objection to the undersigned's recitation, at Page 20 of the Original FCR, of Defendant's arguments. *See* Dkt. No. 36 at 20 of 27. The statements on Page 20 are an

accurate statement of Defendant's position in its summary judgment brief. *Compare id.*, *with* Dkt. No. 23 at 9 of 25, 12 of 25, 21 of 25. The undersigned's Original FCR elsewhere – outside the context of recounting Defendant's arguments – states that the record reflects that Plaintiff was reclassified as a floating pharmacist on February 4, 2010. *See* Dkt. No. 36 at 7 of 27. Plaintiff further asserts that the undersigned "additionally erred by failing to give proper meaning to [the] deceptive act" of placing Plaintiff "'on leave' on February 11, 2010." Dkt. No. 37 at 3 of 8. This objection is immaterial to the undersigned's ultimate conclusion and recommendation and ignores the undersigned's statements in the Original FCR regarding Plaintiff's lack of knowledge of his "on leave" status at the time that he was so classified. *See* Dkt. No. 36 at 8-9 of 27, 19-20 of 27, 25 of 27.

Plaintiff's Objections #5, #6, #7, and #8 assert factual issues that are immaterial to the undersigned's ultimate conclusion and recommendation. *See* Dkt. No. 37 at 3-4 of 8; *see also* Dkt. No. 38 at 7-8 of 22. Nevertheless, to address these objections, the undersigned hereby substitutes the following for the discussion in the Original FCR's Factual Background section, spanning between Pages 6 and 8 of the Original FCR:

Plaintiff completed the on-line portion of the program four days later, and received a certification dated January 16, 2010. *See* Dkt. No. 24-1 at 49 of 52; Dkt. No. 24-3 at 12 of 32, 16 of 32. On January 21, 2010, one of Defendant's Market Scheduler's notified Lewis that she had contacted Plaintiff to schedule him for work as a floater and that Plaintiff told her that he would not float and would not work until he got a set

store. *See* Dkt. No. 24-3 at 14 of 32. On January 28, Lewis told Plaintiff that she "was unsure of how to proceed at this point" because Defendant had attempted to provide him with a schedule, but he declined. *See id.* at 13 of 32. Plaintiff contacted Lewis several times after January 16, 2010, seeking a permanent store assignment. *See* Dkt. No. 29-1 at 25-26 of 48.

On February 2, 2010, Plaintiff contacted Lewis again seeking a store assignment and reminding her that he was not an "on-call pharmacist." Dkt. No. 29-1 at 26 of 48. At that time, Lewis did not have confirmation from Defendant that Plaintiff had completed the program, and she informed him that he would be classified as a floating pharmacist upon completion of the program. *See* Dkt. No. 24-3 at 17 of 114. She also warned him that the matter must be resolved within thirty days of the last day that he worked in order to avoid the loss of benefits or his status in the company. *See id.* The next day, Lewis was notified by Defendant that Plaintiff completed the final exam on February 2, 2010. *See* Dkt. No. 24-1 at 22 of 52, 50 of 52. At various points around this time, Defendant attempted to schedule Plaintiff for work shifts, but Plaintiff refused to accept any shift-work and demanded that he be permanently assigned to a store or otherwise guaranteed a forty-hour work-week. *See* Dkt. No. 24-1 at 23-25 of 52, 28-29 of 52, 43 of 52; Dkt. No. 24-2 at 42 of 79, 44-46 of 79; Dkt. No. 29-3 at 36 of 114, 38 of 114, 43 of 114, 52 of 114.

On February 4, 2010, Lewis notified Plaintiff that he was "now

officially coded as a floating pharmacist" and gave him information about scheduling shifts. She also stated that "[p]lacement in one particular store will be based on a number of factors and may be an option but is not a guarantee at this time." Dkt. No. 29-1 at 30 of 48. On February 7, Plaintiff responded that he had not applied for a floating pharmacist position and did not want such an assignment. Instead, he wanted to return to a permanent store pharmacist position. *See* Dkt. No. 24-3 at 18 of 32.

Lewis and Plaintiff talked on February 11, which was thirty days after he had been removed from his store assignment. *See* No. 24-1 at 22 of 52, 29 of 52. According to Lewis, she told him that he had become a part-time, hourly employee and was classified as "inactive" because he had refused to return to work for thirty consecutive days. *See id.* at 28 of 52, 31 of 52. Plaintiff denies that he was told floating pharmacists who failed to work for thirty consecutive days would be classified as "inactive" or that there had been a change in his employment classification. Instead, he claims that he reiterated his desire to be assigned to a store. *See* Dkt. No. 29-6 at 31 of 37. Unbeknownst to Plaintiff, at some point after February 11, he was classified as "on leave," and, as a result of the "on leave" classification, Defendant did not attempt to schedule Plaintiff for floating pharmacist assignments or offer him other work. *See* Dkt. No. 24-1 at 34-36 of 52; Dkt. No. 29-6 at 31-32 of 37.

On March 16, 2010, Plaintiff wrote to Defendant's Vice President Erv Seimoneit complaining that he was experiencing discrimination. *See* Dkt. No. 24-3 of 32 (App. at 113, not included in electronically-filed copy); Dkt. No. 42-2 at 2 of 2. Seimoneit referred the letter to Frank Koen, Defendant's Market Pharmacy Director for the Dallas Market, who later talked to Plaintiff. *See* Dkt. No. 29-4 at 35 of 80. Koen told Plaintiff that he "would not overrule Ms. Lewis's decision" to change Plaintiff's status to floating pharmacist. Dkt. No. 29-6 at 31 of 37. Koen also told Plaintiff that his choices were to continue to hold the position of floater and accept work assignments while waiting to see if he would be assigned to a store or to resign or retire. *See* Dkt. No. 24-1 at 34-36 of 52; Dkt. No. 24-2 at 71 of 79; Dkt. No. 29-6 at 31 of 37. In response, Plaintiff did not resign or retire but said that he would not return to work unless Defendant assigned him to a permanent position at a store. *See* Dkt. No. 24-1 at 35-36 of 52; Dkt. No. 29-1 at 31 of 48.

Plaintiff's Objection #9 incorrectly identifies the email in which Plaintiff learned of his "on leave" status as dated July 2, 2010, not August 2, 2010. *Compare* Dkt. No. 37 at 4 of 8, *with* Dkt. No. 28-1 at 33 of 48; Dkt. No. 29-6 at 32 of 37. The Original FCR's discussion of when Plaintiff first learned of his "on leave" status is entirely consistent with Plaintiff's assertions in his Objection #9. *Compare* Dkt. No. 36 at 8-9 of 27, 25 of 27, *with* Dkt. No. 37 at 4 of 8.

In Plaintiff's brief in support of his objections, Plaintiff's complaint that he was

not given a deadline earlier than April 1, 2010, *see* Dkt. No. 38 at 5-6 of 22, appears to take issue with the Original FCR's statement that "Plaintiff did not meet the October 7 deadline," Dkt. No. 36 at 4 of 27. However, that statement is supported by the evidence cited only two sentences prior: "On September 28, 2009, Odrobina sent Plaintiff 'the self-study information to re-do your immunization training,' informed Plaintiff that it must be completed by October 7, and said that, after it was completed, she would forward him the final exam code. Dkt. No. 24-4 at 22 [of 79]." *Id.* Plaintiff's brief also asserts that Plaintiff denies ever hearing of an alleged January 7, 2010 deadline, *see* Dkt. No. 38 at 6 of 22, but the Original FCR expressly acknowledges Plaintiff's position on this point, *see* Dkt. No. 36 at 4-5 of 27.

Turning to Plaintiff's objections directed to the findings and conclusions in the Original FCR's Analysis section, many of Plaintiff's objections are based on a misunderstanding of the undersigned's ultimate conclusion and recommendation. The undersigned did not conclude that Plaintiff should have resigned on January 12, 2010 or make a definitive finding that January 12, 2010 was the trigger for Section 21.202(a)'s 180-day filing requirement. The Original FCR stated: "The alleged discriminatory employment decision at the core of Plaintiff's lawsuit is the one to remove Plaintiff from his position as a permanent store pharmacist on January 12, 2010, because he failed to obtain immunization certification by what he characterizes as an arbitrary deadline applied only to him." Dkt. No. 36 at 19-20 of 27. But the undersigned's ultimate conclusion as to the 180-day time limit appears later in the Original FCR: "Thus, August 6, 2010 is the latest date upon which Plaintiff could have

been aware of an allegedly discriminatory employment decision – and therefore the latest possible date from which the 180-day deadline began running," *id.* at 22 of 27, and, therefore, "[t]he summary judgment evidence conclusively establishes that Plaintiff's administrative complaint, filed on February 11, 2011, was untimely because it was not filed within Section 21.202(a)'s filing deadline, 180 days of the date on which the alleged unlawful employment practice occurred," *id.* at 26 of 27. Plaintiff's Objections #1, #2, and #11 [Dkt. No. 37 at 1-2 of 8, 4-5 of 8] are meritless in the face of a correct understanding of the undersigned's actual findings and conclusions regarding the lack of a genuine dispute of material fact as to Plaintiff's compliance with Section 21.202(a)'s jurisdictional and mandatory filing requirement. *See also* Dkt. No. 38 at 7 of 22, 11-13 of 22.

Relatedly, Plaintiff's Objection #12 reflects Plaintiff's disagreement with the undersigned's conclusion that there is no genuine dispute of material fact that August 6, 2010 is the latest date upon which Plaintiff could have been aware of an allegedly discriminatory employment decision and therefore the latest possible date from which the 180-day deadline began running. *See* Dkt. No. 37 at 5 of 8. However, the undersigned thoroughly explained the basis for that conclusion in the Original FCR and will not repeat that analysis here.

Plaintiff's Objections #10 and #13 focus on the ultimately immaterial question of when Plaintiff did or should have resigned. The undersigned explained in the Original FCR that "the exact date of Plaintiff's constructive discharge is not determinative of the issue of whether Plaintiff timely filed an administrative charge

because that is not the date that triggers the running of Section 21.202's 180-day period. Instead, the determinative date is when the Plaintiff was informed of the allegedly discriminatory employment decision. *See Specialty Retailers, Inc.,* 933 S.W.2d at 493. The same events that caused Plaintiff to tell Lewis that he planned or intended to resign on August 6 led to his subsequent written resignation on August 17." Dkt. No. 36 at 21-22 of 27.

To address Plaintiff's Objections #14, #15, and #16, *see* Dkt. No. 37 at 6 of 8; *see also* Dkt. No. 38 at 8 of 22, 9-10 of 22, 14-16 of 22, in recognition of the fact that a determination of the exact date of Plaintiff's resignation and constructive discharge is immaterial to the undersigned's ultimate conclusions and recommendation, as explained in the Original FCR itself, *see, e.g.*, Dkt. No. 36 at 21-22 of 27, the undersigned modifies the statement on Page 21 of the Original FCR [Dkt. No. 36 at 21 of 27] as follows: "Therefore, assuming without deciding that Plaintiff was constructively discharged, if the Court were required to determine the exact date of Plaintiff's resignation in order to resolve this case, Plaintiff might be bound by the August 6, 2010 effective date that he selected and conveyed to Defendant. *See Cooper-Day*, 121 S.W.3d at 85 (holding that effective date of resignation was date it was verbally conveyed to employer)."

As Defendant correctly explains in its response to Plaintiff's objections, Plaintiff's Objection #17 misunderstands that the undersigned's discussion, at Pages 25-26 of the Original FCR, of the relevance of the age of replacement employees and the case cited on that point is directed to the analysis of the trigger for Section 21.202's

180-day jurisdictional filing deadline and not to the standards for actually proving age discrimination on the merits. *Compare* Dkt. No. 37 at 7-8 of 8; Dkt. No. 38 at 20-21 of 22, *with* Dkt. No. 36 at 25-26 of 27; Dkt. No. 41 at 26-27 of 29. The Original FCR did not state that the age of Plaintiff's replacement was irrelevant to Plaintiff's age discrimination claim and did not address whether Plaintiff must show direct or circumstantial evidence of age discrimination. In fact, the Original FCR stated that "[h]iring a younger replacement may be evidence that the employer's decision was discriminatory." Dkt. No. 36 at 25-26 of 27 (internal quotation marks omitted).

Likewise, contrary to the premise of Plaintiff's Objection #20, the Original FCR did not interpret any comments that Plaintiff made in January 2010 as a complaint of age discrimination. *Compare* Dkt. No. 37 at 7 of 8, *with* Dkt. No. 36 at 5-6 of 27, 8 of 27. To the contrary, the undersigned's analysis acknowledged Plaintiff's position that, for some period of time, he did not know if he was a victim of discrimination motivated by Plaintiff's age but explained that, for purposes of determining whether Plaintiff complied with Section 21.202's filing deadline, "Plaintiff cannot rely on his alleged lack of certainty as to Defendant's discriminatory intent, because [t]he date of the discriminatory act controls, not some later date when the employee discovers the act is discriminatory." Dkt. No. 36 at 22-23 of 27 (internal quotation marks omitted).

Plaintiff's Objections #18 and #21 reflect Plaintiff's disagreement with the undersigned's legal conclusions regarding the mandatory and jurisdictional nature of Section 21.202's filing deadline and the resulting inapplicability of equitable tolling. *See* Dkt. No. 37 at 7 of 8; *see also* Dkt. No. 38 at 16-20 of 22. The undersigned

thoroughly explained the bases for those conclusions in the Original FCR and will not repeat that analysis here.

Finally, Plaintiff's Objection #19 reflects Plaintiff's disagreement with the undersigned's belief that the analysis in the Original FCR correctly applied the summary judgment standards and, in the undersigned's view, does not merit any further discussion here. *See* Dkt. No. 37 at 7 of 8.

A copy of these supplemental findings and conclusions shall be served on all parties in the manner provided by law. Any party who objects to any part of these supplemental findings and conclusions must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's supplemental findings and conclusions where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 11, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE